IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2013 Session

## MARIANNE GREER v. PHILIP ERNEST COBBLE

**Appeal from the Circuit Court for Knox County**
**No. 108701      Michael Moyers, Judge**

_____

**No. E2012-01162-COA-R3-CV-FILED-AUGUST 15, 2013**

_____

This appeal concerns a settlement agreement in a divorce. The parties purportedly had reached an agreement regarding the division of their property. An order, proposed by the wife, was signed by counsel for both parties and entered by the trial court. The husband later filed a pro se notice of appeal containing allegations that he did not agree to the terms of the settlement and that it is incomplete. We remand this matter to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Phillip Ernest Cobble, Knoxville, Tennessee, *pro se* appellant.

Shelley S. Breeding and Allison J. Starnes-Anglea, Knoxville, Tennessee, for the appellee, Marianne Greer.

**OPINION**

**I.  BACKGROUND**

Phillip Earnest Cobble ("Husband") and Marianne Greer ("Wife") were married on July 15, 2000, in Knoxville, Tennessee. They lived together as husband and wife in their marital home. The parties had no children from this marriage. Husband has two daughters, Kimberly and Ashley, and Wife has one daughter, Madison Akers.

The parties experienced several setbacks in their relationship, and even attended marriage counseling together. In October 2007, Wife called the police claiming that Husband had battered her, and Husband temporarily moved out of the marital residence. While he was gone, Wife filed for divorce and an order of protection. The parties decided to permanently separate on November 28, 2007.

The divorce ultimately was granted on April 8, 2010, but the division of the parties' property was reserved for trial. The issue of the division of the parties' property and allocation of costs and expenses finally was addressed on December 7 and 8, 2011. On December 8, 2011, the parties announced to the court that a settlement agreement had been reached. Counsel for the parties discussed the agreement before the trial court as follows:

> MS. HELD: Yes, Your Honor. We have what we believe to be an agreement
> . . . .

* * *

> MS. BREEDING: . . . What we have done at this time is, we have said, Mr. Cobble gets what he has plus a certain number of items. Ms. Greer gets what she's using in the house plus a certain number of items in the acres [sic] estate. What's left, they will divide each picking one.
>
> MS. HELD: And then we've stipulated that is a – the values are fifty/fifty.
>
> THE COURT: Okay. Well, then as counsel, you're on the record both. Mr. Cobble, Ms. Greer, you're in agreement with this division of the personalty that remains?
>
> MR. COBBLE: Yes, Your Honor.
>
> THE COURT: Ms. Greer?
>
> MS. GREER: Yes, Your Honor.
>
> THE COURT: All right. Both parties have answered in the affirmative, so that's how we will divide the personalty. . . .

The parties later announced another settlement:

> MS. HELD: Your Honor, I believe we have a settlement, with the Court's

-2-

assistance, which we are profoundly appreciative, and the guidance we've received from the Court today. Under this agreement, Mr. Cobble will take all the parties' 2007 IRS debt. He will take Lost Tree, which is his condo.

* * *

MS. HELD: . . . I think there's like a thousand dollars in 2008, but he is taking all IRS debt. The 2007 was the big one.

* * *

MS. HELD: He is taking all IRS. He is taking possession of Lost Tree, which is his condo. He's taking the mortgage associated with Lost Tree. He is agreeing to a judgment in the total sum of fifty thousand dollars. That breaks down to twenty-five thousand dollars for Lori Fleishman and twenty-five thousand dollars for Shelley Breeding.

He is agreeing to – well, there's already been a judgment entered in the amount of twenty-eight thousand plus interest, whatever that is. It's something less than thirty thousand. That will be paid in installments of a thousand dollars a month with the first payment being due on December 15th. It is anticipated that how these payments will work – and, in fact, we want this as part of the judgment how they will work. That there will be an assignment of – what's it called, lease –

MR. COBBLE: The Lease Management Commission.

MS. HELD: The Lease Management Commission. We have generally referred to it as the Assignment of Rents, but it's technically the Lease Management Commission. That generally runs in the neighborhood of five hundred and eighty-five dollars a month. He will make up the difference between that five eighty-five and a thousand dollars, just however he does it, out of his pocket, and he –

MS. BREEDING: Or if it's less than five eighty-five –

MS. HELD: Or just whatever it is, he will make up the difference between what the rent is –

THE COURT: Right.

MS. HELD: – and a thousand dollars out of his pocket. That will be due, the first payment due December 15 and each month thereafter until the thirty thousand dollar judgment is paid in full.

MS. BREEDING: With interest.

MS. HELD: With the interest. With regard to the attorney's fees, counsel, as in Ms. Breeding, Ms. Fleishman, and myself, will meet or confer sometime prior to the 30th and to come up with a payment plan privately. I don't know that we need to necessarily announce that to the Court.

Something that we didn't specifically discuss, but I guess I kind of assumed was that Ms. Greer's credit card debts would remain hers. Mr. Cobble's credit card debts would remain his. I think she has about sixteen thousand dollars that were accrued during the marriage. Other than the aforementioned fifty thousand dollars, each party pays their own attorney's fees. Court costs split.

Have I left anything out? Oh, and of course, the personalty which we agreed to earlier remains the same.

MS. BREEDING: And I don't know if we need to put that on the record. We have this chicken scratch list.

THE COURT: Just type it out and attach it. Just make it a part of an exhibit to the final judgment.

Both counsel for Husband and counsel for Wife submitted prospective final orders. On January 23, 2012, counsel for Husband noted that the parties were "very close to an Agreed Order," with "[t]he only area of disagreement [being] Paragraph 10." Counsel for Husband indicated as follows:

Ms. Breeding's [proposed] Order gives the life insurance policy to her client; my client is adamant that the parties agreed he should have the policy. I understand that Ms. Greer's position is that she should get the policy because she paid the premium from the date of the divorce until present. Mr. Cobble's position is that the policy and the cemetery plots [were] supposed to be included with the list of personalty to be divided by the parties; that [Wife] picked the cemetery plots and he pick[ed] the insurance policy. He's also uncomfortable with his ex-wife in an acrimonious divorce having an insurance

claim on his life.

The policy has no cash value. If I understand Ms. Breeding, we can agree to either schedule a hearing or a conference call, or we can just live with whichever Order you choose to sign. . . .

On March 30, 2012, counsel for the parties appeared for a hearing in chambers and the court signed and entered the order presented by Wife's counsel. That order provided as follows:

1.  Husband shall be responsible for all outstanding IRS debt of the parties jointly or in Husband's name alone. Wife has no outstanding IRS debt in her name only. Husband shall be responsible for the 2006 tax year debt of approximately Three Thousand Two Hundred Sixty-Five and 24/100 ($3,265.24); the 2007 tax year debt of approximately Ninety-Three Thousand Seven Hundred Fifty and 43/100 Dollars ($93,750.43); and the 2008 tax year debt of approximately One Thousand Thirty-One and 80/100 Dollars ($1,031.80) plus all penalties and interest associated with such. Husband shall hold Wife harmless from such debt and indemnify Wife from such debt.

2.  Wife shall be responsible for the debt in her individual name including the credit cards in her name with Target Visa, CitiCard and Home Federal Visa. Wife shall hold Husband harmless from such debt and indemnify Husband from such debt.

3.  Husband shall be responsible for any debt in his individual name and indemnify Wife from such.

4.  Husband shall pay Wife's attorneys' fees to Fleishman & Knight in the amount of Twenty Five Thousand Dollars ($25,000.00) and to Breeding and Dothard, LLC in the amount of Twenty Five Thousand Dollars ($25,000.00).

5.  Wife is awarded any and all bank accounts in her individual name, including her Home Federal account. Wife is also awarded the Education IRA account that is in the name of Madison Akers for which she is custodian.

6.  Husband is awarded any and all bank accounts in his individual name and his company's name, including the First Tennessee and Regions

accounts for Cobble Realty and in his personal name.

7. Husband is awarded all interest in his real estate company, Cobble Realty, LLC.

8. Husband is awarded the accounts receivable of a loan owed to the parties from Mitch Burnett.

9. Wife is awarded the two (2) cemetery plots.

10. Wife is awarded the life insurance policy on Husband's life.

11. The personal property is divided as shown on the attached Exhibit A.

12. Neither party shall owe alimony to the other party.

13. Husband shall pay to Wife the sum of One Thousand Dollars ($1,000.00) per month toward the outstanding judgments she was awarded in the Order of Protection matter and the previous contempt hearing for non-payment of expenses and alimony by Husband. Such payments shall be made by the fifteenth (15th) day of each month beginning December 15, 2011 and mailed or delivered to the office of Breeding & Dothard, LLC so that such payments are received on or before the fifteenth (15th) day of each month. Husband shall assign his rights to income from the property management division of his company to be directly paid to Wife. Husband shall make up the difference between such payment and One Thousand Dollars ($1,000.00) each month. The judgments shall continue to accrue interest at the statutory rate until the judgments are paid in full. If Husband fails to timely make the December 15, 2011 payment, then he will be subject to serving his suspended sentence as outlined in the Order suspending his sentence. If Husband fails to make payments timely after December 15, 2011, he will not automatically be subject to serve his suspended sentence, but Wife may file a Petition for Contempt related to such.

14. Husband's supervised probation shall be modified so that he is no longer on supervised probation and may leave the State of Tennessee.

15. Husband shall still comply with the terms of the Order of Protection

-6-

entered by this Court granting Wife a permanent Order of Protection. Husband may file a Petition to Modify the terms of the Order of Protection.

It is therefore ORDERED, ADJUDGED, & DECREED that the parties' marital estate is hereby divided as set forth herein.

The signed final order was entered on April 27, 2012. Husband admits he received a copy of this order on May 4, 2012. On May 9, 2012, an order approving the entry of the order was signed by counsel for both parties and filed with the court. This order noted:

1.  The Court approves and enters the Final Order proposed by Plaintiff, Marianne Greer ("Wife").

2.  Defendant, Philip Cobble ("Husband"), is awarded the marital property currently located at his condominium.

3.  Husband and Wife are also awarded the items of real property identified in the hand-written list attached to the asset list identified as Exhibit 1 at the trial of this matter. This award does not include the Ron Williams painting currently located at Defendant's office.

4.  Wife shall make an Affidavit of the marital property, identified in Trial Exhibit 1, that does not exist.

5.  The marital property not awarded herein or awarded pursuant to the Final Order will be divided by the parties. Wife shall select an item of such marital property first; then the parties will alternate selecting items until all items have been claimed.

The record however shows that no exhibit (either "1" or "A") was attached to the final order.

Husband pro se filed a notice of appeal on May 29, 2012. He contended, inter alia, that the final order was fundamentally flawed because the exhibit was not included with the final order.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

a.     Whether the final order from the trial court consisted a final judgment for the purposes of an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure.

b.     Whether Husband timely filed his appeal pursuant to Rule 4 of the Tennessee Rules of Appellate Procedure.

c.     Whether Husband preserved the issues for appeal.

d.     Whether the trial court correctly granted the Wife's motion to dismiss as the Husband consented to the agreed upon final order.

e.     Whether the Husband filed a frivolous appeal stating no reason for which a decision should be reversed and should be subject to sanctions and attorney's fees.

### III.  DISCUSSION

In Tennessee, a judgment that does not dispose of all claims or rights and liabilities requested in a pleading is not a final judgment for purposes of a Rule 3 appeal. *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003).  Further, Rule 3(a) of the Tennessee Rules of Appellate Procedure provides:

> Any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is *not enforceable or appealable* and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Tenn. R. App. P. 3(a) (emphasis added).

Husband's main contention is that the final order from the trial court is not a final judgment because the "Wife and her attorney have failed to file a complete Final Order . . . [and that] the Final Order . . . is flawed beyond repair and is already void de facto in that it cannot be enforced."  He further contends that neither he nor his attorney approved the final order, which should render the order invalid.

Despite the fact that it appears that the parties addressed essentially every conceivable issue in this contentious matter, we find merit in Husband's timely filed assertions.  The exhibit reflecting the distribution of the marital property is not of record.  Because the record

before us is incomplete, we are unable to determine definitively whether a final judgment was entered in this cause. On remand, the trial court is instructed to make specific findings of fact as to the parties' agreement regarding the marital assets, to whom the items are assigned, and the value given to each item. Additionally, the court is instructed to place on the record the declarations of the parties regarding whether or not there are any remaining issues requiring resolution.

## IV. CONCLUSION

We hereby vacate the decision of the trial court and remand this cause for further proceedings consistent with this opinion. Costs are assessed equally against the appellant, Philip Cobble, as well as appellee, Marianne Greer.

_____
JOHN W. McCLARTY, JUDGE